IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERRIS M. BLANKS,<br>   ID # 45953-044,<br>      Plaintiff, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | No. 3:23-CV-2438-N-BW |
| FEDERAL CORRECTIONAL<br>INSTITUTION SEAGOVILLE, et al.,<br>      Defendants. | §<br>§<br>§<br>§ | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Amended Complaint filed by Plaintiff Jerris M. Blanks

("Blanks"), alleging that his civil rights are being violated while he is incarcerated in

the U.S. Bureau of Prisons ("BOP").  (Dkt. No. 17.)  Blanks filed this lawsuit pro se

and was granted permission to proceed in forma pauperis.  As such, his lawsuit is

subject to preliminary screening as provided by the Prison Litigation Reform Act

("PLRA"). Pursuant to such screening and for the reasons stated below, the

undersigned magistrate judge recommends that Blanks's Amended Complaint be

DISMISSED IN PART as frivolous under 28 U.S.C. §§ 1915 and 1915A.

---

[1] By Special Order No. 3-251, this *pro se* case has been automatically referred for full
case management.  By Special Order No. 3-354, this case was referred to the undersigned on
August 23, 2024.  (*See* Dkt. No. 12.)

## I.  INTRODUCTION

Blanks, a federal prisoner currently incarcerated at the Federal Correctional Institution, Seagoville ("FCI Seagoville"), filed this civil rights action against FCI Seagoville and numerous facility medical providers, alleging that they have failed to treat his significant medical conditions, including diabetes, asthma, high blood pressure and sleep apnea.  (Dkt. No. 17 at 2.)  He also alleges that he is kept in "unhealthy and dangerous living conditions," in that he is subject to exposure to mold, asbestos, extreme heat, frequent power outages, secondhand smoke, and a frequently broken ice machine.  (*Id*. at 8.)  Blanks seeks $6,000,000 in compensatory and punitive damages.  (*Id.* at 13.)  Service of process has been withheld pending completion of judicial screening.  (*See* Dkt. No. 10.)

## II.  STANDARD OF REVIEW

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B) (2017).  A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories.  *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373

2

(5th Cir. 2005).  When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records.  *Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the Court accepts well-pleaded factual allegations as true, but it does not credit conclusory allegations or assertions that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).  While courts hold *pro se* plaintiffs to a more lenient standard when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level.  *Id.* (*citing Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### III. LEGAL ANALYSIS

**A.    *Bivens* Evaluation**

Blanks has alleged two categories of civil rights claims: (1) failure to provide medical care and (2) unconstitutional conditions of confinement.  The Court first must determine if Blanks's claims properly arise under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).  *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials"), *overruled on other grounds*, *Castellano v. Fragozo*,

352 F.3d 939, 948-49 & n.36 (5th Cir. 2003)).  In *Bivens*, the U.S. Supreme Court created a cause of action under the Fourth Amendment where federal agents allegedly "manacled" the plaintiff "in front of his wife and children, and threatened to arrest the entire family"; "searched the apartment from stem to stern"; and took him to a federal courthouse where he was "interrogated, booked, and subjected to a visual strip search."  *Bivens*, 403 U.S. at 389.  "Over the next decade, the Supreme Court recognized two other causes of action against federal officers: (1) for gender discrimination against a former congressional staffer in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979); and (2) for a failure to provide an asthmatic prisoner with adequate medical care in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)."  *Bolden v. FBOP*, No. 1:24-CV-270, 2024 WL 4182123, at *1 (W.D. La. Aug. 13, 2024), *rec. accepted* 2024 WL 4181793 (W.D. La. Sept. 12, 2024).  "Since then, the Supreme Court has not once extended the *Bivens* remedy, and it has declined to do so at least a dozen times." *See Looper v. Jones*, No. 22-40579, 2023 WL 5814910, at *1 (5th Cir. Sept. 8, 2023) (unpublished) (citing *Egbert v. Boule*, 596 U.S. 482 (2022)).

As recently as June 30, 2025, the Supreme Court declined to extend *Bivens* to include an implied cause of action for damages based on an excessive use of force claim under the Eighth Amendment.  *See Goldey v. Fields*, 606 U.S. 942 (2025) (per curiam). The Supreme Court "has repeatedly emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity."  *Id.* (quoting *Egbert*, 596 U.S. at

4

492) (cleaned up); *see also Ziglar v. Abassi*, 582 U.S. 120, 135 (2017) (same).

"[C]reating a cause of action is a legislative endeavor." *Egbert*, 596 U.S. at 491. "So today, '*Bivens* claims generally are limited to the circumstances' of *Bivens*, *Davis*, and *Carlson*." *Looper*, 2023 WL 5814910, at *1.

When analyzing a proposed *Bivens* claim, a court must consider: (1) whether the case presents a new context; and (2) if so, whether there are any alternative remedies or special factors indicating that judges are "at least arguably less equipped than Congress" to create a damages remedy. *Egbert*, 596 U.S. at 492; *see also Bolden*, 2024 WL 4182123, at *2. A proposed *Bivens* claim is "new" if the case is different in any meaningful way from *Bivens*, *Davis*, or *Carlson*. *See Abbasi*, 582 U.S. at 139. "Virtually everything else is a 'new context'" and the "understanding of a 'new context' is broad" . . . because 'even a modest extension of the *Bivens* trilogy 'is still an extension.'" *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (citations omitted).

With these standards in mind, the Court assumes for screening purposes that Blanks's medical claims do not present a new context because *Carlson* allowed a medical indifference *Bivens* claim, and Blanks bases several of his claims on medical indifference. *See, e.g., Vaughn v. Bassett*, No. 22-10962, 2024 WL 2891897 (5th Cir. June 10, 2024) (unpublished) (finding that Fifth Circuit precedent, specifically *Carlucci v. Chapa*, 884 F.3d 534 (5th Cir. 2018), held that federal inmate's medical indifference claim did not arise in new *Bivens* context even though, unlike in *Carlson*, the inmate "did not die, his need for medical attention did not relate to asthma, and

5

he had access to the administrative remedy process"). Accordingly, the Court will address Blanks's medical indifference complaints under *Bivens*.

Blanks's claims about the conditions of his confinement, however, differ in "meaningful ways" from the issues in the three cases recognizing an implied cause of action under *Bivens*, and, as a result, the claims clearly attempt to present a new *Bivens* context. *See Goldey*, 606 U.S. at 944 (declining to extend *Bivens* cause of action for excessive use of force in violation of the Eighth Amendment); *see also Morrison v. Wilson*, No. 4:20-CV-222-O, 2021 WL 2716596, at *6 (N.D. Tex. June 30, 2021) (finding plaintiff's Eighth Amendment conditions-of-confinement claims that do not concern a deprivation of medical care present a new *Bivens* context). Because Blanks's claims arise in a new context, the next step is to determine whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Goldey*, 606 U.S. at 944 (internal quotation omitted).

The salient "special factor" in this case is whether "there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493. "The existence of such alternative remedial procedures counsels against allowing *Bivens* suits even if such procedures are not as effective as an individual damages remedy." *Goldey*, 606 U.S. at 944-45 (quoting *Egbert*, 596 U.S. at 498) (cleaned up). "[T]he alternative relief necessary to limit *Bivens* need not provide the

exact same kind of relief *Bivens* would." *Oliva*, 973 F.3d at 444 (rejecting argument that the Federal Tort Claims Act ["FTCA"] provided an insufficient alternative remedy because "Congress did not make individual officers statutorily liable for excessive-force claims"; "This 'silence of Congress is relevant' to the special-factors inquiry.").

The existence of the BOP's administrative remedy program, *see* 28 C.F.R. § 542.10(a), demonstrates that there is an alternative remedial structure in place. That alone counsels against the extension of *Bivens* here. *See Watkin v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (unpublished) (recognizing that an alternative method of relief for a *Bivens* action is the BOP's Administrative Remedy Program). Also, under the FTCA, a federal prisoner may sue for injuries received during incarceration. *Id.* (citations omitted). Because Blanks's conditions of confinement claim presents a new context under *Bivens*, such claims should be dismissed with prejudice under 28 U.S.C. § 1915A(b).

**B.     Official Capacity and Entity Claims**

In his Amended Complaint, Blanks seeks monetary damages against all individual Defendants in both their individual and official capacities. (*See* Dkt. No. 26.) He also names FCI Seagoville as a Defendant. (*See* Dkt. No. 17.) Claims against federal employees in their official capacities based on alleged constitutional violations are barred under *Bivens* because they are the equivalent to claims against the federal agencies themselves. *See Kentucky v. Graham*, 473 U.S. 159, 165-67

(1985).  The purpose of a *Bivens* action is to deter a federal officer from violating a person's constitutional rights; as a result, claims against individuals in their official capacities are barred.  *FDIC v. Meyer*, 510 U.S. 471, 485 (1994); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).  Nor may a *Bivens* action be brought against a federal agency such as the U.S. Bureau of Prisons (FCI Seagoville).  *See Meyer*, 510 U.S. at 484-86; *Moore v. United States Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995).  Accordingly, Blanks has not alleged a viable *Bivens* claim against FCI Seagoville or the individual Defendants in their official capacities, and such claims should be dismissed with prejudice under 28 U.S.C. § 1915A(b).

## C.    Claims Against Rivers and Grant

Blanks sues Warden C. Rivers ("Rivers") and Warden Scarlet Grant ("Grant") as supervisors who failed to alleviate the conditions that exacerbated Blanks's health problems at FCI Seagoville.  (Dkt. No. 26 at 2-5.)  Specifically, he claims that Rivers and Grant were aware that Blanks was subjected to extreme heat in his unairconditioned cell, which had black mold, inadequate ventilation, frequent power outages and "dysfunctional" plumbing.  He further claims that Rivers and Grant failed to ensure that FCI Seagoville provided soap and diabetic food options.  Lastly, Blanks claims that Rivers and Grant failed to provide a functional administrative remedy process because forms were unavailable on several dates and they ignored complaints about the issue.  (*Id.* at 3, 5.)  Blanks also complains that Rivers and Grant failed to train staff to properly care for diabetics and "allowed medical and correction staff to be short staffed."  In short, he alleges that Rivers and

8

Grant failed to "maintain a safe environment." (*Id*. at 2-5; Dkt. No. 26-1 at 1-13; Dkt. No. 26-4 at 6, 8.)  In addition, Blanks alleges that Rivers failed to mitigate the spread of COVID-19, failed to provide methods of social distancing, and failed to test inmates with COVID symptoms.  (Dkt. No. 26 at 2.)

Blanks's claims against Rivers and Grant as supervisory officials seek to impose liability that is meaningfully different from the standard deliberate indifference claims allowed in *Carlson*.  "While *Bivens* has been applied to Eighth Amendment claims for deliberate indifference to serious medical needs, it has never been extended to the supervisory claims as asserted herein."  *Copeland v. Chambers*, No. 3:20-CV-585, 2022 WL 392454, at *2 (S.D. Miss. Jan. 20, 2022), *rec. accepted* 2022 WL 392322 (S.D. Miss. Feb. 8, 2022) (citations omitted); *see also Stroud v. Warden USP Lewisburg*, No. 1:22-CV-515, 2022 WL 17340626, at *5 (M.D. Pa. Nov. 30, 2022) (determining failure-to-supervise claim was "plainly" a new context for a *Bivens* claim) (citing *Shorter v. Samuels*, No. 3:16-1973, 2019 WL 6492534, at *7 (M.D. Pa. Dec. 3, 2019); *Longworth v. Mansukhani*, No. 5:19-CT-3199-FL, 2021 WL 4472902, at *4 (E.D.N.C. Sept. 29, 2021); *Ross v. Hayden*, No. 19-CV-1427, 2021 WL 810106, at *3 (D. Colo. Mar. 3, 2021)).

Further, there are reasons to hesitate before judicially extending *Bivens* to these new contexts.  The legislative branch has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts.  Yet it has not passed legislation that would extend a *Bivens* remedy to Blanks's establishment-of-a-deficient-system,

failure-to-train and failure-to-supervise claims, which counsels against the Court doing so here. *Goodloe v. United States*, No. 3:22-CV-005-G-BH, 2023 WL 4712204 (N.D. Tex. June 21, 2023), *rec. accepted* 2023 WL 4707997 (N.D. Tex. July 24, 2023) (citation omitted). Moreover, the existence of the FTCA weighs against inferring a new *Bivens* cause of action for these claims. *See Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (citing 28 U.S.C. § 2680(h)); *Tate v. Harmon*, 54 F. 4th 839, 846 (4th Cir. 2022) (rejecting *Bivens* claim based on deplorable conditions of confinement because it was "broad-based" and "systemic," against an "array of federal officials" and would "expand prison officials' liability from previous *Bivens* actions to systemic levels"); *see also Awan v. Harmon*, No. 3:17-cv-130, 2021 WL 2690088 (N.D. Tex. June 1, 2021) (collecting cases and finding that complaints about un-airconditioned cell and other conditions of confinement presented a new *Bivens* context). Accordingly, Blanks's claims against Rivers and Grant are not cognizable under *Bivens* and should be dismissed with prejudice under 28 U.S.C. § 1915A(b).

**D.     Claims Against Defendant LaVonda Dillard**

Blanks alleges that Defendant LaVonda Dillard ("Dillard") has failed to provide him constitutionally adequate medical care on numerous occasions. (Dkt. No. 26 at 9-10.) The Eighth Amendment proscribes cruel and unusual punishments, which the Supreme Court has interpreted to include deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For deliberate indifference to rise to the level of a constitutional violation, the plaintiff

must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. *Id.* at 838. Deliberate indifference "is an extremely high standard to meet." *Hernandez v. Tex. Dep't of Protective & Regul. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

A prison official acts with deliberate indifference "only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 847); *see also Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994). Unsuccessful medical treatment, acts of negligence, and medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Instead, a showing of deliberate indifference requires the prisoner to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."

*Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert*, 463 F.3d at 345 n.12.

### 1.  Deteriorating eyesight.

First, Blanks alleges that, since 2021, Dillard has failed to ensure that he received an eye exam.  His eyeglasses prescription expired in 2022; further, he has frequent headaches that Dr. Justin Sterett ("Sterett") believes are caused by a change in his vision and using glasses with an improper prescription.  (*Id.*)  In addition, despite numerous requests from both Blanks and Sterett, Dillard has failed to send him for a diabetic eye exam.  (*Id.* at 9.)  As a result, Blanks alleges that he has suffered deterioration and permanent loss of vision, which causes him to fall, "run into things" and suffer painful headaches.  (*Id.*)  He claims that Dillard intentionally chose to not follow doctors' orders to send him for diabetic eye exams, despite writing in his medical records that she would do so.  (*Id.* at 22-23.)  His medical records from his 2021 eye exam state that he should return within one year for a comprehensive eye exam, and that, because of his diabetes, his eyesight should be monitored annually or sooner if changes in vision occur. (Dkt. No. 26-2 at 3.) Blanks claims that Dillard failed to comply with the doctor's instructions.  (*Id.*)

### 2.  Insulin and other medication

Blanks alleges that Dillard failed to renew his insulin prescription "multiple times," which caused other medical providers to deny him insulin for several weeks,

despite his high blood sugar level, for several weeks.  (Dkt. No. 26 at 10; Dkt. No. 26-3 at 9-16.)  He claims that Dillard "intentionally chose to not [renew] [his] insulin . . . until after several requests[s]."  (Dkt. No. 26 at 22.)  He claims that Dillard was "aware of the risk and dangers of her actions of denying [him] diabetic medical care."  (*Id.* at 23.)  In addition, he claims that Dillard failed to renew his prescription for psychiatric medication, which led him to experience hallucinations. (*Id.*)

### 3.  Sleep apnea and sleep deprivation

Blanks next alleges that Dillard failed to provide a CPAP machine that was prescribed for him in 2021 by Sterett due to Blanks's sleep apnea.  (Dkt. No. 26 at 9.) On May 15, 2023, Sterett noted on Blanks's medical records that Blanks still had not received the CPAP machine despite numerous requests from both Blanks and Sterett. (*Id.*; Dkt. No. 26-2 at 8.)  Blanks eventually received one on August 21, 2023, but until that time suffered headaches, sleep paralysis, labored breathing, apnea, nightmares and hallucinations because Dillard waited more than two years to provide the CPAP machine.[2]  (Dkt. No. 26 at 9, 39.)

---

[2] Blanks further alleges that Dillard and Defendant Kenneth Russell committed perjury by falsifying his medical records to show that he had been issued a CPAP machine in 2021; however, this alleged fact, standing alone, fails to state a *Bivens* claim against either defendant.  (Dkt. No. 26 at 20.)  Further, to the extent Blanks alleges criminal law violations, his request lacks legal basis because criminal statutes do not create a private right of action.  For a private right of action to exist under a criminal statute, there must be "a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone."  *Cort v. Ash*, 422 U.S. 66, 79 (1975), *overruled in part by Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979); *see Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (concluding that the party seeking to imply a private right of action bears the burden to show that

### 4.   Failure to Treat Other Conditions

Next, Blanks alleges that, after several months of Blanks complaining about his severe abdominal pain, Dillard ordered an ultrasound.  (*Id.*)  The test showed that Blanks has an abnormal-sized liver and texture.  He claims that Dillard disregarded the test results and has not sent him to see a liver specialist or otherwise treated his continuing abdominal pain.  (Dkt. No. 26 at 10-11, 54; Dkt. No. 26-3 at 4.)  He also alleges that Dillard allowed his prescription for anti-anxiety medication to lapse from July 28 to August 21, 2023, and failed to treat him for his diagnosed depression.  (Dkt. No. 26 at 31, 33; Dkt. No. 26-5 at 21.)  He also claims that Dillard refuses to treat him for his post-COVID symptoms such as reduced lung volume, memory loss, dizziness, lack of focus and shortness of breath.  (Dkt. No. 26 at 36-37, 52.)

Blanks's claims against Dillard for (1) failing to treat his degenerative eye condition and his ongoing abdominal (liver) pain; and (2) failure to ensure that his medical prescriptions (insulin and psychiatric medication) were maintained survive judicial screening.  Taking Blanks's allegations as true, as the Court must do at this stage of the proceedings, he has stated a claim that Dillard (1) knows that Blanks faces a substantial risk of serious bodily harm by failing to treat his eye disease and failing to maintain his prescriptions, and (2) disregarded that risk by failing to take

---

Congress intended to create one).  Blanks does not satisfy this burden.  *See also Williams v. Cintas Corp.*, No. 3:07-CV-0561-M, 2007 WL 1295802, *2 (N.D. Tex. Apr. 10, 2007) (collecting cases finding no private cause of action for perjury in federal court and no private right of action for civil perjury under Texas law), *rec. accepted*, 2007 WL 1300780, at *1 (N.D. Tex. May 2, 2007).

reasonable measures to abate it. *See Gobert*, 463 F.3d at 346 (citing *Farmer*, 511 U.S. at 847). The Fifth Circuit has noted that failing to provide treatment for a chronic illness may constitute deliberate indifference. *See Ford v. Anderson County*, 102 F.4th 292, 309-10 (5th Cir. 2024) (citing *Egebergh v. Nicholson*, 272 F.3d 925, 927-28 (7th Cir. 2001) (jury could find deliberate indifference for failing to provide a diabetic detainee with a morning insulin shot)); *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999) (reversing summary judgment for an officer accused of denying diabetes medication to an inmate); *see also Lawson v. Dallas County*, 286 F.3d 257, 260-61 (5th Cir. 2002) (staff knew the inmate had a serious ailment but "did not provide the prescribed treatments, seek alternative placement for [the inmate] or monitor the progression of his wounds"). Blanks has plausibly alleged a *Bivens* claim against Dillard for medical indifference.

However, three of Blanks's claim against Dillard should be dismissed as frivolous: (1) failing to provide a CPAP machine for two years; (2) failing to renew his anti-anxiety medication for 24 days, and (3) failing to treat his ongoing COVID symptoms. A delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). Blanks fails to allege that either the two-year delay in receiving a CPAP machine or the 24-day delay in receiving anti-anxiety medication caused substantial harm. Additionally, Blanks provides medical records showing that, in fact, he is receiving treatment for what he claims to be ongoing COVID symptoms. (*See* Dkt. No. 26-5 at 23, 25.) To the extent Blanks disagrees

with the treatment he is receiving for his COVID symptoms, such disagreement does not rise to the level of a constitutional violation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Accordingly, these claims should be dismissed as frivolous.

**E. Claims Against Defendants Winbush, Tews, Moquin, Griffith and Unknown Nurses for Failure to Provide Insulin**

Blanks alleges that Defendants Tammy Winbush ("Winbush"), Deborah Tews ("Tews"), Leon Moquin ("Moquin"), Officer Griffith ("Griffith") and Unknown Nurses failed to provide him insulin on various occasions, thereby placing his life in danger and causing his health problems to worsen. (Dkt. No. 17 at 2.) Specifically, he alleges that Winbush was "made aware" that he was denied insulin on March 27 and April 16, 2024, but "disregarded this, and she did not have medical do a follow up." (Dkt. No. 26 at 7.) He further alleges that Tews failed to provide him insulin from February 22 to March 1, 2024, because Dillard had failed to renew his insulin prescription. (*Id.* at 13.) He alleges that Moquin failed to deliver insulin to him on September 19, September 20 and September 27, 2023. (*Id.* at 11, 23.) Blanks further alleges that "Unknown Nurses" failed to deliver insulin to him on 17 days in August and September 2023. (*Id.* at 20, 23.) He alleges that Moquin and the Unknown Nurses (1) knew he was diabetic; (2) were to deliver insulin to a list of diabetics who needed insulin; (3) should know the risk of failing to provide insulin; and (4) did not provide him insulin on the dates listed in his questionnaire responses. (*Id.* at 23.) Lastly, Blanks alleges that Griffith refused to allow Banks to get insulin on April 16, 2024, although his blood sugar was extremely high. (*Id.* at 14.) Blanks immediately

16

reported Griffith to Case Manager Aguirre, who ensured that Blanks was allowed to get insulin. (*Id*.)  Blanks also reported Griffith to Winbush, who did not respond. (*Id*.)

Blanks has not sufficiently pleaded details showing how, specifically, these Defendants were deliberately indifferent to his serious medical need.  He acknowledges that Dillard let his insulin prescription lapse, apparently on several occasions; he has not shown that these Defendants acted with deliberate indifference in not providing insulin on certain specific days.[3]  Assuming that these Defendants should have known that Blanks was diabetic and customarily received insulin, such does not state a claim.  An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference."  *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."  *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001).  Instead, an official "must both be aware of

---

[3]Because there is no cognizable vicarious liability claim available under *Bivens*, none of the insulin providers can be found responsible for failing to provide all of the insulin Blanks claims to have missed.  *See, e.g., Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) ("To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant," because there is no vicarious liability under § 1983/*Bivens*") (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990)).

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Farmer*, 511 U.S. at 837); *see also Lawson*, 286 F.3d at 262 (holding that deliberate indifference is a "subjective inquiry," and inmate must show that the prison official was actually aware of risk of harm and consciously ignored it). Blanks has failed to show deliberate indifference by these defendants.

To the extent that Blanks's claims against Tews and Griffith could constitute a claim for delay in delivering medical care, he fails to state a plausible claim. As discussed above, delay in delivering medical care creates constitutional liability only when the alleged deliberate indifference results in substantial harm. *Mendoza*, 989 F.2d at 193. Blanks alleges no facts showing that the delay his failure to obtain insulin on the occasions attributed to Tews and Griffith caused substantial harm. Blanks has failed to state a plausible *Bivens* claim against these defendants and, as a result, such claims should be dismissed with prejudice.

**F.     Claims Against Rivers, Dillard and Salinas Regarding Diabetic-Safe Meals**

Blanks alleges that Rivers, Dillard, and Food Service Administrator J. Salinas ("Salinas") do not offer diabetic safe meals, although they all are aware that there are diabetics in FCI Seagoville and that "the BOP is aware" that a doctor has recommended a low-carbohydrate diet for Blanks.[4] (Dkt. No. 17 at 7; Dkt. No. 26 at

---

[4] Because Blanks alleges no facts showing that Rivers personally participated in providing his meals, the claims against him should be dismissed as improper supervisory liability claims, as discussed *supra*.

18

16, 27.)  These defendants, Blanks claims, serve only high-carbohydrate meals.  (Dkt. No. 26-4 at 8-23.)  Blanks claims that, because he must only eat high-carbohydrate meals, his blood sugar remains high.  This, combined with the irregular provision of insulin, places him "in danger of permanent nonreversible damage."  (Dkt. No. 17 at 7.)  Specifically, he alleges that his diet has worsened his diabetic neuropathy, which hinders his ability to exercise and caused him to completely lose sensation in both feet.  (Dkt. No. 17 at 10).  He claims that Dillard knows of the risk to his health that a standard prison diet poses, but has failed to instruct Salinas and the staff to provide him low-carbohydrate meals.  (Dkt. No. 26 at 27.)

The Eighth Amendment's prohibition on cruel and unusual punishment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care," and to "take reasonable measures to guarantee the safety of the inmates."  *Farmer*, 511 U.S. at 832 (internal citations omitted).  "Prison officials have a constitutional obligation to provide reasonably adequate food[.]"  *Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994); *see also Jones v. Tex. Dep't of Crim. Just.*, 880 F.3d 756, 760 (5th Cir. 2018) (remanding denial of preliminary injunction where a diabetic plaintiff "assert[ed] that if the deprivations of his prescribed diet continue[d], he [was] liable to suffer additional strokes, heart attacks, and other life-threatening diabetic complications").  At this stage of the proceedings, Blanks has stated a claim against Dillard for failure to ensure that Blanks receives adequate diabetic-safe meals that do not exacerbate his conditions.

However, Blanks has failed to allege plausible facts showing that Salinas is aware of his need for a low-carbohydrate diet.  As shown above, Blanks must allege facts showing that Salinas knew of and disregarded an excessive risk to his health or safety.  *Farmer*, 511 U.S. at 837.  Blanks fails to show that Salinas (rather than "the BOP") is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and also drew such inference.  *Id.*  Blanks's claim against Salinas should be dismissed with prejudice.

## G.    Additional Claims Against Winbush

### 1.    HIPAA violation

Blanks alleges that Winbush violated the Health Insurance Portability and Accountability Act ("HIPAA") by disclosing his medical records to an assistant U.S. attorney, presumably in connection with a motion for compassionate release filed by Blanks.  (Dkt. No. 17 at 3; Dkt. No. 26 at 7.)  HIPAA states that individually identifiable medical information cannot be disclosed by covered entities without the consent of the individual, unless disclosure is expressly permitted under the terms of HIPAA.  45 C.F.R. § 164.502.

Assuming *arguendo* that Blanks is correct and Winbush improperly shared his protected health information, his allegations still fail to state a claim because HIPAA does not provide a private right of action.  *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction over [the plaintiff's] asserted claims."); *see also*

*Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 882 (5th Cir. 2010) (same). Therefore, even if Winbush improperly disclosed protected health information under HIPAA, and even if Winbush were a "covered entity" subject to HIPAA requirements, Blanks has no right to sue for a HIPAA violation and such claim should be dismissed with prejudice.

### 2.    Failure to Provide Medical Care

Blanks next alleges that Winbush failed to approve trips to see various specialists (liver, lung, nerve, vision, post-COVID symptoms) that were recommended by BOP doctors. (Dkt. No. 26 at 7.) However, he provides no facts supporting this conclusory allegation to show that Winbush was acting with deliberate indifference in failing to refer Blanks to specialists. Blanks alleges no facts indicating that Winbush was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," nor does he allege facts showing that Winbush drew such inference, or that she even had the authority to refer him to free-world specialists. *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837). His claims against Winbush should be dismissed with prejudice.

### H.    Claims against Shannon Howden and Officer Bowser

Blanks alleges that, on April 8, 2024, he notified Officer Bowser ("Bowser") that he had suffered an asthma attack, but she refused to let him go to sick call and said she was too busy to deal with him. (Dkt. No. 26 at 35; Dkt. No. 17 at 11.) Nevertheless, Blanks apparently reported to sick call on the same date. (*Id.*) When he arrived, nurse Shannon Howden ("Howden") refused to treat him, saying that

21

"we are only seeing inmates if it[']s life threatening, because we are going to observe the eclipse this afternoon." (Dkt. No. 26 at 12.)  She told Blanks to go to sick call the next day.  After he told her that he had had an asthma attack, she responded with "you look alive to me" and turned him away.  (*Id.*; *see also* Dkt. No. 26 at 35.)

Blanks fails to allege what, if any, harm he suffered due to what appears to be a one-day delay in obtaining medical care.  As noted above, a delay in delivering medical care creates constitutional liability only when the alleged deliberate indifference results in substantial harm.  *See Mendoza*, 989 F.2d at 193.  Blanks alleges no substantial harm resulting from Bowser's or Howden's conduct.  As a result, Blanks's claims against Bowser and Howden should be dismissed with prejudice.

## I.     Claim Against Twyla Border

Blanks alleges that, during an appointment with Twyla Border ("Border") on June 23, 2022, he asked about obtaining diabetic shoes because his nephropathy was worsening and it was painful for him to walk in prison-issued boots.  (Dkt. No. 26 at 20.)  At the time, he had bruising on his feet.  Without checking to see what, if any, soft shoes were available, Border told him that they had none in his size, but that she would put him on sick call once they did.  (*Id.*)  He received the shoes "one year later." (*Id.* at 24.)  As of September 16, 2024, Blanks has complete loss of sensation in his feet and permanent nerve damage.  (*Id.* at 20-21.)

Blanks fails to state a claim against Border. Under the authorities cited above, Blanks fails to allege facts showing that Border was aware of a serious medical need, that she knowingly withheld treatment (the shoes) or that she drew the inference that

he would lose complete sensation in his feet more than two years later due to her not providing soft shoes.  His claims against Border should be dismissed.

## J.   Claims against Sterrett and Dr. McDermott

Blanks states in his questionnaire responses that he dismisses his claims against Sterett.  (Dkt. No. 26 at 8.)  He further states in a subsequently filed motion that he dismisses his claims against Psychology Administrator Dr. McDermott. (Dkt. No. 31 at 2.)  Accordingly, the Court should consider Blanks's statements to be Notices of Dismissal against Sterett and McDermott pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

## K.   Negligence and Malpractice Claims

In addition to his claim that Defendants were deliberately indifferent to his serious medical needs, Blanks alleges that the individual Defendants acted with negligence and committed malpractice when providing medical care.  (Dkt. No. 26 at 55, 57.) However, such claims fail to state a constitutional violation.

Simply put, allegations of negligence and malpractice fail to state a constitutional violation.  *Gobert*, 463 F.3d at 346.  Instead, an inmate must show that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable constitutional claim for deliberate indifference to serious medical needs.  *Johnson*, 759 F.2d at 1238. Accordingly, to the extent that Blanks attempts to assert a claim of negligence or malpractice, such claims should be dismissed.

**L.     Leave to Amend.**

Ordinarily, "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster*, 587 F.3d at 767-68.  Even so, the Court need not grant leave to amend "if the plaintiff has already pleaded his 'best case.'" *Id*. at 768.  As discussed here, despite amending his complaint once and answering an extensive questionnaire, Blanks fails to state a plausible claim against all Defendants other than Dillard.  Based on the most deferential review of his Amended Complaint, it is unlikely that, given the opportunity, he could allege viable legal claims against these Defendants.  Blanks has stated his best case in his Amended Complaint and questionnaire responses.  Under these circumstances, the Court concludes that granting leave to amend would be futile and cause needless delay.[5]

### III.  RECOMMENDATION

For the reasons stated above, the Magistrate Judge concludes that Blanks's claims against all defendants other than Dillard in her individual capacity for medical indifference (as set forth above) should be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  (Dkt. No. 17.)

---

[5]That notwithstanding, the 14-day objection period will permit Blanks the opportunity to proffer factual and/or legal bases, if any, to cure the deficiencies in his claims outlined herein.

**SO RECOMMENDED** on March 9, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. _See_ 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. _See Douglass v. United Services Automobile Ass'n_, 79 F.3d 1415, 1417 (5th Cir. 1996), _modified by statute on other grounds_, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).